IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DR. HANSEL M. DEBARTOLO, )
)
Plaintiff, )
)
v. ) No. 04 C 1119
)
BLUE CROSS BLUE SHIELD OF )
ILLINOIS, an Independent )
Licensee of the Blue Cross and )
Blue Shield Association, MIDWEST )
OPERATING ENGINEERS WELFARE )
PLAN, and BOARD OF TRUSTEES )
MIDWEST OPERATING ENGINEERS )
HEALTH AND WELFARE FUND, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendant Board of Trustees Midwest Operating Engineers Welfare Plan ("the Trustees") administers the Midwest Operating Engineers Welfare Fund ("the Fund"). The Fund was established, pursuant to collective bargaining agreements ("CBAs"), as a joint labor-management trust fund which provides welfare benefits to employees under several CBAs. The principal document governing the operation of the Fund is the Midwest Operating Engineers Welfare Plan ("the Plan"). The Plan identifies the Trustees as the Plan Administrator for the Fund. Plaintiff Dr. Hansel M. DeBartolo alleges that the Plan and the Trustees have failed to pay benefits due under the plan in violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (Count I), and

failed to provide requested information in violation of 29 U.S.C. § 1132(c)(1) (Count II).[1] Defendants now move for summary judgment on both counts. I grant that motion, for the reasons stated below.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The facts of this case, summarized below, are largely undisputed. Where they are in dispute, I have construed the facts in the light most favorable to Dr. DeBartolo.

Joel Miller was a participant in the Fund. On February 18, 1999, Mr. Miller assigned his benefits under the Plan to Dr. DeBartolo. Dr. DeBartolo then proceeded to treat Mr. Miller for a number of conditions, beginning on February 18 and continuing through July 12, 1999. Mr. Miller's diagnosis was a nasal fracture, and his treatment included surgery and follow-up care. In August and September 1999, Welfare Claims Manager for the Plan, Scott Willie, wrote Dr. DeBartolo requesting additional information

---

[1] Blue Cross Blue Shield of Illinois, formerly a defendant, has been dismissed from this action.

2

to support the medical charges for the period between February 18 and May 5. On October 1, Dr. DeBartolo sent 28 pages of additional medical notes and test results to Mr. Willie.

On October 12, Mr. Willie sent Dr. DeBartolo's claims and supporting information to Unique Medical Assessment of Claims ("UMAC"), an independent medical review group used by the Fund to assess claims for (1) the medical necessity of the claimed procedures and (2) the reasonable and customary charges for such procedures. On October 24, UMAC issued a report denying Dr. DeBartolo's claims in part, finding that many of the claimed procedures were not documented as medically necessary and that the claimed charges for other procedures were above the reasonable and customary charges for those procedures (and were therefore reduced accordingly). The term "medical necessity" is defined in the plan as meeting eight listed criteria; "reasonable and customary charge" is also defined. UMAC recommended that Dr. DeBartolo be awarded $4,500 of the more than $26,000 in charges he claimed. On October 29, Mr. Willie wrote Dr. DeBartolo, requesting that he accept the amount recommended by UMAC. Dr. DeBartolo did not respond to that letter.

On November 23, the Plan issued Dr. DeBartolo a check in the amount of $3,600; the $4,500 recommended by UMAC less the co-pay owed by Mr. Miller. On December 6, Dr. DeBartolo wrote Mr. Willie, protesting the partial denial of his claims. Dr. DeBartolo's

letter contained no new medical information to support his claims, instead referencing an earlier lawsuit against the Plan, threatening new legal action if his claims were not paid, and listing his medical credentials. When Mr. Willie inquired if Dr. DeBartolo was requesting a second review of his claims, Dr. DeBartolo answered that he was.

On January 5, 2000, Mr. Willie sent Dr. DeBartolo's claims and supporting information to Medical Cost Management ("MCM"), a second independent medical review company used by the Fund. On February 14, MCM issued a report denying Dr. DeBartolo's claims in part. MCM recommended reducing many of the charges, and explicitly agreed with UMAC's review where it stated that claims were not medically necessary. On March 9, the Fund's Review Panel reviewed Dr. DeBartolo's claims, including the two reviews from UMAC and MCM, and upheld the denial and/or reduction of Dr. DeBartolo's claims. On March 14, Mr. Willie requested more specific information from MCM concerning the denials and reductions, which MCM provided on April 10.

On April 18, Dr. DeBartolo again wrote the Fund, protesting the denial or reduction of his claims. Much like in his earlier letter, Dr. DeBartolo provided no additional medical information to support his claims, but recited his credentials and threatened legal action. Mr. Willie wrote to Dr. DeBartolo, informing him that the Review Panel's meeting would be held on May 11. Dr.

DeBartolo faxed additional medical information to the Fund on that date, but did not attend the meeting. On June 1, Mr. Willie sent the additional information to MCM, requesting a second review of Dr. DeBartolo's claims.

On June 27, MCM issued two additional recommendations, approving partial payment for services rendered on one date and denying others as not medically necessary. On July 5, the Fund issued Dr. DeBartolo an additional check in the amount of $1,448.80 for the additional claims recommended as medically necessary by MCM. On July 12, David Bodley, administrative manager for the Plan, informed Dr. DeBartolo that the Review Panel would reconsider his appeal at a July 19 meeting. Dr. DeBartolo did not attend that meeting. On August 9, Mr. Bodley wrote Mr. Miller, affirming the decision concerning Dr. DeBartolo's claims.

Count I of Dr. DeBartolo's complaint alleges that defendants have failed to pay the benefits due under the Plan, in violation of ERISA. 29 U.S.C. § 1132(a)(1)(B). When a benefits plan gives the administrator discretion to interpret that plan, review of a benefits determination should be made according to the "arbitrary and capricious" standard. *Manny v. Central States, Southeast and Southwest Areas Pension and Health and Welfare Funds*, 388 F.3d 241, 242 (7th Cir. 2004). Under that standard, the administrator's decision will only be overturned when it is "unreasonable, and not merely incorrect." *Jacobs v. Xerox Corp. Long Term Disability*

*Plan*, 356 F. Supp. 2d 877, 885 (N.D. Ill. 2005)(Filip, J.). In reviewing that decision, I must consider "whether the plan administrator (1) considered the factors relevant to the decision, and (2) articulated an explanation that makes a 'rational connection' between the issue, the evidence, the text, and the decision made." *Id.* at 888. The parties here agree that the Plan gave the administrator such discretion, but disagree as to whether the benefits denial was arbitrary and capricious.

Dr. DeBartolo argues that summary judgment must be denied, as the Trustees' denial of benefits was neither reasonable nor based on the terms of the Plan, and therefore was arbitrary and capricious. Defendants argue that the decision was supported by the evidence before the Trustees, and therefore not arbitrary and capricious, and I agree. Dr. DeBartolo's claims were reviewed three times by medical experts, and the Trustees had those reviews, along with the supporting records, before them when they made their decision. *See, e.g., Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998)(stating that "[s]eeking independent expert advice is evidence of a thorough investigation"). Upon review of Mr. Miller's medical records, those experts found that Dr. DeBartolo had not conformed with the prevailing medical practices with regard to documentation of the medical necessity for the procedures he performed on Mr. Miller.

6

When repeatedly given the opportunity to expand the record before the medical experts or the Trustees, or to explain how his charges were either medically necessary or not outside the reasonable and customary charges (the reasons given for denial or reduction of his claims), Dr. DeBartolo refused to do so, relying instead on threats of legal action and recitation of his credentials. *See, e.g., Kessen v. Plumbers' Pension Fund, Local 130*, 877 F. Supp. 1198, 1203-04 (N.D. Ill. 1995)(Bucklo, J.)(concluding trustees' decision was reasonable based in part on their two invitations to plaintiff to submit additional information).

Dr. DeBartolo now attempts to raise a number of problems he sees with the Trustees' review of his claims. First, he argues that a denial because a claim is not medically necessary is a general denial, rather than a specific denial as required by the Plan. Second, Dr. DeBartolo argues that the Trustees do not know how the Prevailing Charge figures, used by the medical experts to adjust charges so that they are within the reasonable and customary range, are compiled, but instead rely on the experts' knowledge. Third, he argues that the Plan did not use its own database for computing the Prevailing Charge, but again relied on the medical experts. These arguments are too little, too late. Dr. DeBartolo was free to raise these arguments during any of the repeated appeals and reviews of his charges. He chose not to, and may not

now circumvent the administrative process by bringing those arguments instead in federal court. *Jacobs*, 356 F. Supp. 2d at 892-93 (citing *Sims v. Apfel*, 530 U.S. 103, 108-09 (2000)(stating general issue-exhaustion rule)); *see also Stark v. PPM America, Inc.*, 354 F.3d 666, 671-72 (7th Cir. 2004).

Dr. DeBartolo also argues that the Trustees failed to give his claims a "full and fair" review, and that they erred by relying on the reports from the medical experts. As I noted above, Dr. DeBartolo's claims were reviewed three times by medical experts, and the resulting reports and the claims were twice reviewed by the Trustees. The Trustees twice issued decisions explaining the relevant provisions of the Plan, along with the reasoning behind their denial of portions of Dr. DeBartolo's claims. Indeed, when Dr. DeBartolo did choose to submit additional medical information about the procedures from one date, the Trustees revised their decision to grant additional benefits for a procedure shown to be medically necessary by the new information.

Dr. DeBartolo argues that the Trustees erred in relying on the reports from the medical experts, stating that the reports were inconsistent and that the Trustees did not personally know which experts had reviewed the claims. The Trustees' reliance on outside medical experts was not unreasonable, nor contrary to the Plan. *See Hightshue*, 135 F.3d at 1148. Dr. DeBartolo does not argue that UMAC, MCM, or the individuals doctors that make up those groups are

8

unqualified. Nor does he argue that those doctors were presented with incomplete or inaccurate information. *Id.* Dr. DeBartolo provides no legal support for his argument that I should find otherwise. The Trustees' decision to deny some of Dr. DeBartolo's claims, and reduce the amount of others, was not arbitrary and capricious. Defendants' motion for summary judgment with respect to Count I is granted.

Count II of Dr. DeBartolo's complaint alleges that defendants violated ERISA by failing to furnish him with information related to the Plan, as he requested. 29 U.S.C. § 1132(c)(1). On March 14, 2002, Dr. DeBartolo's attorney wrote to Blue Cross Blue Shield of Illinois ("BCBS"), informing it of an attorney's lien on the unpaid amounts charged by Dr. DeBartolo for the services provided to Mr. Miller in 2000. On March 20, BCBS's attorney requested that all further correspondence on the matter be directed to his attention. On September 13, 2003, Dr. DeBartolo's attorney requested a copy of the Plan from BCBS. BCBS did not respond to that request.

Certain types of information, such as the plan documents, must be provided by the plan administrator upon a plan participant's request. 29 U.S.C. § 1024(b)(4). If the plan administrator fails to do so, the court may, in its discretion, fine the plan administrator up to $100 per day. 29 U.S.C. § 1132(c). However, the Trustees are the plan administrator here, not BCBS, and Dr.

9

DeBartolo makes no allegation that he requested the plan documents from the Trustees. In order to hold the Trustees liable for the failure of BCBS to respond, Dr. DeBartolo must be relying on an agency theory. BCBS was not an actual agent of the Trustees in this regard, nor did it have apparent agency. Apparent agency "arises when a principal creates, by its word or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf." *Illinois Conference of Teamsters and Employers Welfare Fund v. Mrowicki*, 44 F.3d 451, 463 (7th Cir. 1995). Dr. DeBartolo here relies on two pieces of evidence to support his apparent agency theory. The first is the March 20 letter from BCBS's attorney, but that letter is in response to Dr. DeBartolo's March 14 letter threatening legal action against BCBS. The March 20 letter is not an act by the Trustees and cannot support the reasonable impression that BCBS was acting as their agent. The second is an unexecuted agreement between the Fund and BCBS. Dr. DeBartolo cannot have relied on this document to support a reasonable belief that BCBS was acting as the Trustees' agent, as he did not know of its existence until discovery in this lawsuit.

Even if Dr. DeBartolo had been able to establish that BCBS was acting as the Trustees' agent, actual or apparent, it would not matter. Section 1132(c) provides for fines against the allegedly erring party "in the court's discretion." 29 U.S.C. § 1132(c).

10

Regardless of whether Dr. DeBartolo received the plan documents in response to his September 2003 request, he has suffered no injury as a result. *See Clark v. Hewitt Assoc., LLC*, 294 F. Supp. 2d 946, 952 (N.D. Ill. 2003)(Moran, J.). His injury as alleged here is the denial or reduction of the claims he filed, for services rendered to Mr. Miller. Those services were performed in 1999; the claims examined and partially denied in 1999 and 2000. Dr. DeBartolo does not explain how his failure to receive plan documents requested three years later had any effect on that denial. He also does not explain why, after his prolonged review and appeal process with defendants, he chose to request the documents from BCBS, not the Trustees. The defendants' motion for summary judgment with respect to Count II is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: June __, 2005